IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSÉ SOTO,

      Plaintiff,

v.

NANCY WHITE, JEFFREY MANLOVE,
DONNA LARSON, BELINDA SCHRUBBE,
ANN YORK, GAIL WALTZ, and AMY
GUNDERSON,

      Defendants.

OPINION & ORDER

17-cv-551-jdp

---

  Pro se plaintiff José Soto is an inmate at the Waupun Correctional Institution (WCI). I granted him leave to proceed on his Eighth Amendment deliberate indifference claims against each of the named defendants, who he alleges failed to provide him with adequate medical care for his painful foot condition. Dkt. 9. He has filed five motions: (1) a motion to compel discovery and for sanctions, Dkt. 20; (2) a motion for leave to file an amended complaint, Dkt. 27; (3) a motion for assistance in recruiting counsel, Dkt. 28; (4) a motion for a preliminary injunction, Dkt. 33; and (5) a motion for leave to pay for a deposition using funds from his release account, Dkt. 35. Although the motion for preliminary injunction is still being briefed, the other four motions are ready to be decided.

  For the reasons explained below, I will deny Soto's motion for assistance in recruiting counsel. I will grant his motion to compel in part only. I will withhold judgment on his motion for leave to pay for a deposition from his release account pending a telephonic hearing. I will grant Soto's motion to amend his complaint, as well as defendants' request that the deadline for summary judgment motions be moved from October 5 to November 9, 2018. Dkt. 32.

ANALYSIS

**A. Motion to compel and for sanctions**

Soto makes three allegations in his motion to compel: (1) that defendants have neglected to sign or notarize their discovery responses; (2) that defendants are refusing to provide measurements of relevant distances within the institution; and (3) that defendants are improperly withholding documents from his medical record concerning physical examinations of his feet between January 1, 2015 and the present.

Soto's allegation that defendants did not sign or notarize their interrogatory responses appears to have been resolved for the most part. Soto includes as exhibits three interrogatory signature pages with blank signature blocks and notary acknowledgments, Dkt. 21-1, at 1–3, which were provided to him as part of defendants' responses to his interrogatories. But the record shows that when Soto inquired about the absence of notarized signatures, defendants' counsel told him that, because defendants responded to Soto's first set of interrogatories with documents rather than written responses, they did not believe signatures were necessary. Dkt. 31-3. Defendants are not quite correct about the signature requirement.

Soto's first set of interrogatories are actually hybrid requests that include both an interrogatory and a request for production.[1] Under Rule 34, there is no requirement that a response to a request for production of documents be signed by a party. But under Rule 33, the responding party must sign for the answers and the attorney must sign for the objections.

---

[1] For example, Soto's first interrogatory states as follows: "1. STATE the duties of Defendant Nancy White, Health Service Manager at times relevant to this action, at the Waupun Correctional Institution. If those duties are set forth in any job description or other document, produce the document." Defendants respond by referring Soto to a specific Bates range from their production of documents rather than by separate written response. Dkt. 31-1, at 12–13.

If the answer to an interrogatory can be derived from business records, and the burden ascertaining the answer would fall substantially equally to either party, Rule 33(d) allows the responding party to answer by producing business records. But that response is still a response to an interrogatory. And it should be signed by the responding party, who, by signing, certifies that the business records will provide a truthful answer to the question posed by the interrogatory.

Counsel for the defendants agreed to provide the signatures thinking it was a courtesy rather than a requirement. But in the end Soto got most of the signatures that he was entitled to: each defendant then provided notarized signatures for each interrogatory response in which he or she participated. *See* Dkt. 31-4, at 5–11, 15–16, 27–32; Dkt. 31-5, at 2–3. The one exception is defendant Nancy White, who has not signed for her responses to the first set of interrogatories.[2] She will need to provide that signature by October 15, 2018.

In his reply, Soto contends that the signed signature pages are themselves deficient because they were not dated by the signatories, do not contain oaths or affirmations that they were signed under penalty of perjury, and do not indicate which interrogatories the signature pages are associated with. Dkt. 38, at 1. He attaches as exhibits eight signature pages sent to him by defendants' counsel to illustrate these defects. Defendants' signatures are not perfectly compliant.

The signatures were notarized, which satisfies the oath requirement under Rule 33(b)(3) and provides the signature date. Soto is correct that the eight signature pages he

---

[2] Defendant White provided a completed signature page for Soto's third set of interrogatories, Dkt. 31-5, at 2, but appears never to have provided a completed signature page for Soto's first set of interrogatories, Dkt. 31-4, at 8 (blank signature block).

appends to his reply brief do not indicate which number interrogatory response each signature page is associated with. Instead, they say only "AS TO INTERROGATORIES." Dkt. 38-1, at 1–7, 9. (By contrast, on the signature pages associated with the responses to Soto's third set of interrogatories, defendants specify the interrogatory responses to which each signature applies. *E.g.*, Dkt. 31-4, at 27 ("AS TO INTERROGATORY RESPONSE NOS. 1–3, 10")). Plaintiff is entitled to know who answered each interrogatory, so I'll require defendants' counsel to provide this information to Soto by October 15, 2018. I will not require that defendants re-sign for the interrogatories, although that is one way for them to provide the required information to Soto.

Soto's reply raises one additional signature-related issue: he says that defendants' objection to his first set of interrogatories went unsigned by defendants' counsel. But a review of the record shows that defendants' counsel *did* sign as to the objection. *See* Dkt. 31-1, at 14. Soto is correct that a second copy of the responses to his first set of interrogatories, which accompanied the later-provided signature pages defendants' counsel sent as a courtesy on June 13, 2018, lacks a signature block for defendants' counsel. *See* Dkt. 31-4, at 4. However, counsel's signature as to the objection had already been provided.

Soto objects to defendants' refusal to provide specific measurements of the locations he frequents within the prison. He asks me to direct defendants to provide these measurements so that he can illustrate the extent of the pain he suffers when walking from place to place. Dkt. 38, at 2. Defendants object to these requests as improper subjects for a Rule 34 document request because they would require defendants to create documents that do not exist, and they contend that the requests are unduly burdensome. Soto notes that, in a prior lawsuit of his, defendants at another institution provided specific measurements in response to a request for production. *See* Dkt. 21-1, at 11–12 (discovery responses in *Soto v. Morgan*, No. 11-cv-567

(W.D. Wis. filed Aug. 10, 2011)). Defendants are correct that Rule 34 does not require parties to create new documents in response to document requests. And the fact that the defendants in another case were willing to provide measurements in response to a request for production does not mean that defendants in the current case are required to do the same. If Soto believes precise distances are important to the prosecution of his case, he can make that request as an interrogatory. I will not compel defendants to provide these measurements in response to a Rule 34 request for production of documents. (Although this strikes me as a matter that reasonable litigants and counsel could resolve informally.)

Finally, Soto alleges that defendants have not produced documents of physical exams of Soto's feet from January 1, 2015 to the present. Whether there are any such documents is not clear: Soto's complaint alleges that such examinations have never occurred. Dkt 1, at ¶ 10; Dkt. 27, at ¶ 10. Soto is entitled to an opportunity to review his medical records. Defendants assert that they have provided Soto with "a courtesy copy of over 500 pages of medical records," but they have not said that those 500 pages constitute his entire medical record or otherwise confirmed that Soto has had an opportunity to review all of the files that might contain records of any physical exam. Dkt. 30, at 3. In light of this ambiguity, I will grant Soto's motion to compel with respect to his medical records. By October 15, 2018, defendants must certify either that they have provided Soto with his complete medical file or that they have provided him an opportunity to review it in full. That means that if defendants have not yet afforded Soto an opportunity to review his entire medical record, they must promptly do so.

Soto asks that I impose sanctions on the defendants for "l[ying] to [the] court in February until Soto produced documents" and "misrepresent[ing] facts in the case." Dkt. 21,

at 2. There were no filings in this matter in February, and these allegations are not specific enough to determine whether sanctions are appropriate. I will therefore deny Soto's motion for sanctions.

### B. Motion for leave to file an amended complaint

Soto has filed an unopposed motion for leave to amend the complaint, Dkt. 25, along with a proposed amended complaint, Dkt. 27. The proposed changes are minor: he wishes to add two defendants, Health Services Unit Managers Scarpita and Crystal Marchant. He has also increased the amount of compensatory and punitive damages sought against defendants Anne York, Gail Waltz, and Amy Gunderson from $50,000 to 150,000. I will grant Soto's motion, and will consider the amended complaint to be the operative pleading. I must proceed by screening the amended complaint under 28 U.S.C. § 1915A and dismissing any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. Since Soto's amended complaint is substantially identical to the complaint I previously screened, Dkt. 9, not much additional analysis is needed.

Soto alleges that defendants, including newly added defendants Scarpita and Marchant, know about his foot condition and know that the condition causes him great pain unless he has proper support from custom orthotics, yet fail to adequately treat the condition. As I explained in my screening order, this is sufficient to make out a claim that his Eighth Amendment rights have been violated. I will therefore allow Soto to proceed on his Eighth Amendment claims against defendants Scarpita and Marchant. Because of the late amendment, I will also grant defendants' request that the deadline for summary judgment be moved from October 5 to November 9, 2018. Dkt. 32.

### C. Motion for assistance in recruiting counsel

As for Soto's motion for assistance in recruiting counsel, I will deny it without prejudice. There is no right to counsel in civil cases, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), so a party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). Soto has already met two of the requirements because he has shown that he is unable to afford counsel and that he has made reasonable efforts on his own to find a lawyer. *See* Dkt. 5; Dkt. 29-2.

But Soto must also show that his is one of the relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id.* at 655. Soto highlights his mental health problems, his placement in segregation, and the complexity associated with prosecuting cases involving medical issues as evidence of his need for assistance in recruiting counsel.

Soto's psychiatric records indicate that he does indeed suffer from several mental health issues, Dkt. 29-1, but he has thus far shown himself to be a capable and zealous litigant in spite of these limitations. His numerous submissions to the court demonstrate that he can write persuasively, make arguments, and cite relevant legal authority. Similarly, his placement in segregation, which he says reduces his access to legal materials and the law library, does not appear to have hindered his ability to litigate this case. He has filed five motions in the past six weeks alone, each of which demonstrates facility with legal research and the procedural rules.

Soto argues that his claims are of such a complex nature as to require assistance of counsel. Specifically, he notes that this case will require review of restricted "security and medical manual policies not allowed to prisoners for review even [in] civil action[s]. Counsel on the other hand, "will be permitted [to review] and use [] restricted security/medical policies." Dkt. 28, at 4. It is unclear what policies or manuals Soto is referring to, or why his case will implicate documents that prisoners are restricted from viewing. That said, if this case ultimately does come to involve policies or manuals that defendants will not let Soto review, Soto can renew his motion for assistance in recruiting counsel.

Soto further argues that his case will "require depositions and expert testimonies of individuals not available to plaintiff, the resources necessary to locate witnesses no longer employed by D.O.C.,"[3] and the capacity to "question, subpoena, depose," and deploy "medical terminology, charts, graphs, books, expert testimony and depositions." *Id.* But the Court of Appeals for the Seventh Circuit has rejected the view that every claim about medical care requires expert testimony or assistance of counsel. *See, e.g., Romanelli v. Suliene*, 615 F.3d 847, 853–54 (7th Cir. 2010). Soto's claims center on the straightforward allegation that defendants failed to provide him with adequate medical treatment. When it "is so obvious that even a lay person would perceive the need for a doctor's attention," but prison staff fail to provide treatment, that is a violation of the Eighth Amendment. *Greeno v. Daley*, 414 F.3d 645, 653

---

[3] Soto does not identify which former DOC employees he believes it necessary to depose. If Soto can identify specific individuals and explain why their depositions are necessary, he should ask defendants' counsel if defendants will cooperate in coordinating these depositions. If defendants are unwilling to do so, Soto can contact the court. If necessary, the court can help facilitate telephonic depositions.

(7th Cir. 2005). Such a claim does not necessarily require expert testimony or the assistance of counsel, and Soto has failed to identify specific aspects of his case that he believes make it especially complex. Although complexities may come into focus as the case moves forward, it is too soon to tell whether assistance of counsel will be necessary. I will therefore deny Soto's motion for assistance in recruiting counsel without prejudice.

**D. Motion for leave to pay for a deposition using release account funds**

In his latest motion, Soto asks for leave to pay for a deposition using funds from his inmate release account, or, in the alternative, to allow him to conduct a deposition at WCI with a video camera and in the presence of a notary public. Soto believes depositions are necessary in this case because, in his words, when "defendants are questioned verbally by Soto . . . they give truthful answers, . . . yet when on paper (admissions, etc.) they give false replies, indicating [that an] attorney is doing the answering to cover wrongdoing and manipulate the record." Dkt. 35, at 1.

Soto has the right to take depositions in accordance with the procedures outlined in Rule 30, and he has articulated a reasonable explanation as to why such depositions are necessary. He must, however, assume the associated financial costs himself. Soto asks me to allow him to pay for court reporting costs using the funds in his release account. He points out that, because he is serving a life sentence without parole, use of his release account funds will not harm anyone. He makes a plausible argument. As explained further below, I will hold a telephonic hearing on this issue, during which defendants can address whether Soto might be allowed to pay for litigation expenses using his release account funds.

As an alternative to paying court reporting costs, Soto proposes that I order the institution's records office to permit him to "conduct a videotaped recording at Waupun

9

Correctional Institution and swear in defendant by way of [a] notary public at WCI." Dkt. 35, at 2. Under Rule 30, depositions "may be recorded by audio, audiovisual, or stenographic means," and a notary public may serve as an "officer . . . designated under Rule 28." Fed. R. Civ. P. 30(b)(3)(A), (5)(A). Soto could therefore conduct minimally adequate depositions without the services of a court reporter. This would make depositions substantially less expensive, although Soto would still need to bear any costs associated with the notary and the audio or audiovisual recording himself. *See* Fed. R. Civ. P. 30(b)(3)(A) ("The noticing party bears the recording costs.").

With guidance from the court, the parties in this case may be able to work out a solution that will allow Soto to take depositions at minimal expense. I will therefore order that a telephonic hearing be scheduled on Soto's motion. At this hearing, Soto should be prepared to identify each individual he seeks to depose and explain why each deposition is necessary to his case. Defendants should be prepared to discuss the costs associated with recording depositions by audiovisual means in front of a notary public, as well as whether Soto might be allowed to pay for deposition expenses using his release account funds. I will withhold a decision on Soto's motion pending this hearing.

ORDER

IT IS ORDERED that:

1. Plaintiff José Soto's motion to compel, Dkt. 20, is GRANTED as to his medical records, the missing interrogatory signature of defendant Nancy White, and the specification of the interrogatory numbers associated with the defendants' signatures. By October 15, 2018, defendants must certify either that they have provided Soto with his complete medical file or that they have provided him an opportunity to review that file in full, provide a properly executed interrogatory signature for Nancy White, and identify which signatory answered each interrogatory.

2. Soto's motion to compel, Dkt. 20, is DENIED as to Soto's requests for production of measurements and Soto's request for sanctions.

3. Soto's for leave to file an amended complaint, Dkt. 27, is GRANTED.

4. Defendants' request that the deadline for summary judgment be moved from October 5 to November 9, 2018, is GRANTED.

5. Soto's motion for assistance in recruiting counsel, Dkt. 28, is DENIED without prejudice.

6. The court will hold a telephonic hearing on October 10, 2018 at 1:00 p.m. on Soto's motion for leave to pay for depositions using funds from his release account. Dkt. 35. Counsel for defendant is responsible for initiating the conference call to chambers at (608) 264-5504. The court will withhold decision on this motion until after that hearing.

Entered October 4, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge